UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JEREMY D. ALBERS,                    )
                                     )      No. CV-10-5007-JPH
            Plaintiff,               )
                                     )
v.                                   )      ORDER GRANTING DEFENDANT'S
                                     )      MOTION FOR SUMMARY
MICHAEL J. ASTRUE,                   )      JUDGMENT AND DENYING
Commissioner of Social Security,     )      PLAINTIFF'S MOTION FOR
                                     )      SUMMARY JUDGMENT
            Defendant.               )
                                     )
                                     )
_____)

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 22, 25.)  Attorney Cory J. Brandt represents plaintiff; Special Assistant United States Attorney Gerald J. Hill represents defendant.  The parties have consented to proceed before a magistrate judge.  (ECF No. 7.)  After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Jeremy D. Albers  (plaintiff) protectively filed for supplemental security income (SSI) and disability insurance benefits (DIB) on May 11, 2007.  (Tr. 158, 162.)  Plaintiff alleged an onset date of December 31, 2005. (Tr. 116.)  Benefits were denied initially and on reconsideration.  (Tr. 126, 132.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before Paul Gaughen on July 7, 2009.  (Tr. 79-121.)  Plaintiff was represented by counsel and testified at the hearing. (Tr.87-111.)  Vocational expert K. Diane Kramer also testified.  (Tr.111-19.)  The ALJ denied benefits (Tr. 14-28) and the Appeals Council denied review. (Tr. 1.)  The matter is now before this court pursuant

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

1  to 42 U.S.C. § 405(g).

2  **STATEMENT OF FACTS**

3      The facts of the case are set forth in the administrative hearing transcripts, the ALJ decision, and

4  the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

5      Plaintiff was 32 years old at the time of the hearing. (Tr. 89.) He dropped out of school in the

6  11th grade and obtained a GED. (Tr. 352.) He is a military veteran. (Tr. 89.) He has worked as an auto

7  parts clerk, laborer, cashier, vehicle porter, stock clerk, and sales clerk. (Tr. 89-90, 108, 112-13.)

8  Plaintiff testified he has problems with his lower back which cause problems with employment. (Tr. 91.)

9  He was let go from his last job because his back injury was a liability. (Tr. 91.) He testified back pain

10 causes limited movement and mobility. (Tr. 102.) Sometimes his legs drop out from under him. (Tr.

11 91.) He testified he has muscle spasms in his lower back that shoot up his left side. (Tr. 91.) He takes

12 medication for his back pain which causes drowsiness, dizziness, nausea, loss of function and impairs

13 his judgment. (Tr. 92.) Plaintiff testified he also has problems with his neck which causes him to be

14 unable to turn his neck and radiates pain from the neck down to his arm. (Tr. 93.) Plaintiff has

15 neuropathy in his left arm which involves throbbing, tingling, numbness and loss of grip. (Tr. 93-94.)

16 Plaintiff has been diagnosed with pancreatitis, irritable bowel syndrome, and hypertension. (Tr. 94-96.)

17 He testified he experiences insomnia, acid reflux, shoulder pain, depression, post traumatic stress disorder

18 (PTSD), panic attacks, and anxiety (Tr. 97-101.) Plaintiff said the condition that has the biggest impact

19 on his life is his back. (Tr. 101.) Plaintiff testified he had a drinking problem when he was self-

20 medicating to deal with pain. (Tr. 107.)

21 **STANDARD OF REVIEW**

22     Congress has provided a limited scope of judicial review of a Commissioner's decision. 42

23 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the

24 determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,*

25 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The

26 [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are

27 supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42

28 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -2

1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he or she is engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past.  If plaintiff is able to perform his or her previous work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

1    However, a finding of "disabled" does not automatically qualify a claimant for disability benefits.

2  *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.)  When there is medical evidence of drug or

3  alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor

4  contributing to the disability.  20 C.F.R. §§ 404.1535(a), 416.935(a).  It is the claimant's burden to prove

5  substance addiction is not a contributing factor material to her disability.  *Parra v. Astrue*, 481 F.3d 742,

6  748 (9th Cir. 2007.)

7    If drug or alcohol addiction is a material factor contributing to the disability, the ALJ must

8  evaluate which of the current physical and mental limitations would remain if the claimant stopped using

9  drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling.  20

10  C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

11    **ALJ'S FINDINGS**

12    At step one of the sequential evaluation process, the ALJ found plaintiff did not engage in

13  substantial gainful activity since December 31, 2005, the alleged onset date.  (Tr. 17.)  At step two, the

14  ALJ found plaintiff has the following severe impairments: degenerative disc disease with herniated disc

15  and right side foraminal narrowing; affective disorder and alcohol addiction disorder with anxiety and

16  disturbances in mood; probable impingement syndrome of the left upper extremity; and history of cubital

17  tunnel syndrome.  (Tr. 17.)  At step three, the ALJ found that plaintiff's impairments, including the

18  substance use disorder, meet sections 12.04 and 12.09 of 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 17.)

19  Because the record contains evidence of substance abuse, the ALJ continued the analysis.  The ALJ

20  determined that if plaintiff stopped the substance use, plaintiff would continue to have a severe

21  impairment or combination of impairments.  (Tr. 19.)  The ALJ then determined:

22    If the claimant stopped the substance use, the claimant would have the
residual functional capacity to perform light work as defined in 20 CFR

23    404.1567(b) and 416.967(b) except he requires an alcohol-free work
setting; he requires a sit/stand option; he can stand and/or walk for six

24    hours in an eight-hour workday with normal breaks, but can walk for no
more than 15 minutes at a time; he should not work at unprotected heights

25    or dangerous industrial settings; he can occasionally use his upper left
extremity; he can perform occasional handling and fingering; he requires

26    access to restroom facilities at work during normal breaks; he cannot
engage in higher level social interaction, but can engage in perfunctory or

27    routine interaction; he should be limited in goal-setting, executive work,
or independent work, and requires a supervisor and structure in order to

28    maintain alertness on basic work activities.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

1  (Tr. 21.)  At step four, the ALJ found plaintiff would be able to perform past relevant work as a sales

2  clerk and cashier, if plaintiff stopped the substance use.   (Tr. 27.)   Because plaintiff would not be

3  disabled if he stopped the substance use, the ALJ determined plaintiff's substance use disorder is a

4  contributing factor material to the determination of disability (Tr. 28.)  As a result, the ALJ concluded

5  plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged

6  onset date through the date of the decision.  (Tr. 28.)

7                                                    **ISSUES**

8         The question is whether the ALJ's decision is supported by substantial evidence and free of legal

9  error.  Specifically, plaintiff asserts the ALJ erred by: (1) failing to identify PTSD as a severe impairment

10  at step two; (2) rejecting the opinions of treating and examining medical providers; (3) rejecting

11  plaintiff's subjective complaints; (4) rejecting lay witness statements; and (5) making an improper step

12  four analysis.  (ECF No. 23 at 9-20.)  Defendant argues the ALJ: (1) made a reasonable assessment of

13  plaintiff's testimony and the medical and lay witness evidence; (2) made the required findings at step four

14  and properly analyzed plaintiff's past relevant work; and (3) reasonably omitted PTSD from the list of

15  severe impairments.  (ECF No. 26 at 9-21.)

16                                                 **DISCUSSION**

17  **1.     Credibility**

18         Plaintiff argues the ALJ improperly rejected his subjective complaints.  (ECF No. 23 at 13-16.)

19  In social security proceedings, the claimant must prove the existence of a physical or mental impairment

20  by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's

21  own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The effects of all symptoms

22  must be evaluated on the basis of a medically determinable impairment which can be shown to be the

23  cause of the symptoms.  20 C.F.R. § 4416.929.

24         Once medical evidence of an underlying impairment has been shown, medical findings are not

25  required to support the alleged severity of the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.

26  1991)  If there is evidence of a medically determinable impairment likely to cause an alleged symptom

27  and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting

28  a claimant's subjective complaints. *Id.* at 346.  The ALJ may not discredit pain testimony merely because

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ summarized plaintiff's allegations of limitations and complaints to medical sources, then concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of plaintiff's symptoms are not credible to the extent they are inconsistent with the RFC finding. (Tr. 22, 26.) The ALJ specifically found that plaintiff's testimony is credible concerning his ability to walk for extended periods of time, his need for an accessible restroom in a work environment, and his need to alternate sitting with standing. (Tr. 25.) Additionally, the ALJ gave deference to plaintiff's complaints about his left arm and included limitations on use of plaintiff's left arm in the RFC, despite a lack of evidence indicating plaintiff's post-surgery arm complaints will last more than 12 months.[1] (Tr. 24.) The ALJ discussed plaintiff's alleged physical impairments and their corresponding symptoms separately from plaintiff's mental conditions and corresponding symptoms. (Tr. 23-26.)

---

[1]The ALJ pointed out that Dr. Martinez examined plaintiff in June 2009 and noted prior left elbow surgery, but assessed no left arm impairment. (Tr. 739-41.) Nonetheless, the ALJ gave plaintiff the benefit of the doubt and included limitations of occasional use of the upper left extremity and occasional handling and fingering in the RFC. (Tr. 21, 24-25.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

The ALJ gave several reasons for finding plaintiff's allegations less than fully credible.  First, the ALJ found the objective medical evidence does not support the level of limitations claimed.  (Tr. 23, 25.)  As plaintiff points out, an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  However, that does not mean the objective medical evidence has no bearing on plaintiff's credibility.  The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2).  One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.  S.S.R. 96-7p.  The ALJ must consider such factors as the degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.  *Id.*  Furthermore, objective medical evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques is a useful indicator in making reasonable conclusions about the intensity and persistence of symptoms.   20 C.F.R. § 416.929(c)(2).  The ALJ discussed the medical evidence in substantial detail and pointed out where the objective medical evidence and plaintiff's physical complaints were inconsistent.  (Tr. 23-24.)  Notably, plaintiff does not argue that the ALJ misinterpreted the evidence or that the evidence does not support the credibility findings.  The ALJ properly considered the medical evidence in assessing plaintiff's credibility and his interpretation of the evidence is reasonable.

Additionally, the ALJ did not make the negative credibility finding for the sole reason that plaintiff's complaints are inconsistent with the evidence.  The second reason given by the ALJ in assessing plaintiff's credibility is that plaintiff's complaints are inconsistent with his reported activities.  (Tr. 25-26.)  Plaintiff argues this is an improper consideration, but evidence about daily activities is properly considered in making a credibility determination.  *Fair*, 885 F.2d at 603.  Plaintiff is correct that a claimant need not be utterly incapacitated in order to be eligible for benefits.  (ECF No. 23 at 15-16, citing *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001).  Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be possible to rest or take medication.  *Fair*, 885 F.2d at 603.  However, daily activities may be the basis of an

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261 F.3d at 857. The ALJ noted plaintiff reported playing pool up to three times per week and that the ability to play pool is inconsistent with statements that plaintiff cannot stand for very long, bend, or use his upper left extremity. (Tr. 25, 179, 183, 584.) The ALJ observed plaintiff is able to take care of a young child by himself which is inconsistent with the degree of mental limitations alleged. (Tr. 26, 175, 178.) Plaintiff has friendly and romantic relationships despite his anger problem and depression. (Tr. 20, 26, 178, 365.) Plaintiff prepares his own meals and does his own chores and a counselor opined that plaintiff did not require support to maintain independence in his living situation. (Tr. 19, 175, 541.) Plaintiff shops in stores, leaves home by himself, and plays games. (Tr. 19, 178.) All of these activities reasonably suggest abilities inconsistent with the limitations alleged by plaintiff. As a result, the ALJ properly considered plaintiff's daily activities in making the credibility determination.

A third reason mentioned by the ALJ in justifying the negative credibility determination is that plaintiff is not fully compliant with prescribed medications. (Tr. 25.) Credibility is undermined by unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, see, e.g., 20 C.F.R. § 404.1530(c); *Gallant*, 753 F.2d at 1455, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony. *Fair* 885 F.2d at 603. Plaintiff reported that he forgets to take medication for neuropathic pain, and the record reflects he did not report taking prescribed antidepressants or stops prescriptions for depression rather quickly. (Tr. 321, 353, 359, 697.) The ALJ reasonably inferred from the evidence that plaintiff's pain complaints are less credible because plaintiff did not make use of prescriptions to alleviate symptoms.

Lastly, the ALJ noted conflicting evidence regarding plaintiff's alcohol use. (Tr. 26.) Conflicting or inconsistent testimony concerning alcohol use can contribute to an adverse credibility finding. *Robbins. V. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006). The ALJ pointed out that in October 2007, plaintiff told one provider that he had not used alcohol on a weekly basis during the past 12

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

months, but elsewhere reported binge drinking and drinking every day before and after that date. (Tr. 26, 546, 353, 564, 572, 574, 701.)  Furthermore, the ALJ noted that both psychologists and physicians had diagnosed alcohol abuse. (Tr. 26, 353, 739.)  The ALJ reasonably interpreted the evidence to conclude that plaintiff is inconsistent in reporting alcohol use, suggestive of a lack of credibility.  This is another clear and convincing reason properly considered in making the negative credibility finding.

The ALJ cited a number of clear and convincing reasons supported by substantial evidence which adequately justify the negative credibility finding.  The medical evidence, plaintiff's daily activities, plaintiff's failure to follow prescribed treatments, and inconsistent reporting regarding alcohol consumption all reasonably suggest a lack of credibility.  As a result, the ALJ did not err with respect to the credibility determination.

**2.    Step Two**

Plaintiff argues the ALJ erred by not considering post traumatic stress disorder a severe impairment.  (ECF No. 23 at 9-10.)  At step two of the sequential process, the ALJ must determine whether a claimant suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations.  *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28.  In *Bowen v. Yuckert*, the Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28.  482 U.S. 137, 153-54 (1987).  "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." S.S.R. 85-28.  Basic work activities

include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." *Id.* Even where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities. 20 C.F.R. § 416.929. If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.* As explained in the Commissioner's policy ruling, "medical evidence alone is evaluated in order to assess the effects of the impairments on ability to do basic work activities." S.S.R. 85-28. Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence.

The ALJ noted Dr. Grindlinger diagnosed PTSD, recurrent depressive episodes and alcohol abuse and gave weight to Dr. Grindlinger's opinion. (Tr. 17, 19, 353.) The ALJ pointed out that Dr. Zimmerman diagnosed probable symptoms of PTSD, but noted that plaintiff did not describe those symptoms as particularly problematic. (Tr. 25, 359.) The ALJ also noted the opinion of Dr. Kraft, a reviewing physician, who indicated the diagnosis of PTSD is not supported due to the paucity of self-reported symptoms of hypervigilance or intrusive thoughts. (Tr. 27, 404.) While PTSD may be a medically determinable impairment, the ALJ reasonably concluded the impact of plaintiff's PTSD symptoms does not rise to the level of a severe impairment. Indeed, no limitations due to PTSD were identified by any psychologist, especially apart from the effects of alcohol abuse. While the ALJ did not necessarily link the PTSD discussion to the step two findings, the ALJ adequately addressed the PTSD diagnosis. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). All reasons discussed by the ALJ constitute "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), or "reasons the ALJ assert[ed]," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). As a result, the ALJ did not err in failing to find PTSD is a severe impairment at step two.

**3.    Opinion Evidence**

Plaintiff argues the ALJ improperly rejected the opinions of Jeff Pharaoh, MSW, MHP and

Laurie Spencer, RN.  (ECF No. 23 at 10-12.)  In a disability proceeding, the ALJ must consider the opinions of acceptable medical sources.  20 C.F.R. §§ 404.1527(d), 416.927(d); S.S.R. 96-2p; S.S.R. 96-6p.  Acceptable medical sources include licensed physicians and psychologists.[2]  20 C.F.R. §§ 404.1513(a), 416.913(a).  In considering evidence from medical sources, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  In addition to evidence from acceptable medical sources, the ALJ may also use evidence from "other sources" including nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources.  20 C.F.R. §§ 404.1513(d), 416.913(d).  In evaluating the evidence, the ALJ should give more weight to the opinion of an acceptable medical source than that of an "other source."  20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

Social Security Ruling 06-3p summarizes regulations providing that only an acceptable medical source can: (1) establish the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source.  Evidence from other sources can be used to determine the severity of an impairment and how it affects the ability to work.  S.S.R. 06-3p; 20 C.F.R. §§ 404.1513(d), 416.913(d).  "Information from other sources cannot establish the existence of a medically determinable impairment. . . . However, information from 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  S.S.R. 06-3p.  An ALJ must give reasons germane to "other source" testimony before discounting it.  *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).  Lay testimony can never establish disability absent corroborating competent medical evidence.  *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

---

[2]Other acceptable medical sources are licensed podiatrists and optometrists and qualified speech-language pathologists, in their respective areas of specialty only.  20 C.F.R. §§ 404.1513(a), 416.913.(a).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

a.    **Jeff Pharaoh, MSW, MHP**

Plaintiff argues the ALJ erred by failing to provide a valid reason for rejecting the opinion of Jeff Pharaoh, MSW, MHP.    (ECF No. 23 at 10-11.)    Mr. Pharaoh completed a DSHS Psychological/Psychiatric Evaluation form on April 22, 2008.[3]  (Tr. 602-05.) Mr. Pharaoh listed PTSD as a diagnosis and assessed a marked limitation in the ability to exercise judgment and make decisions and in the ability to respond appropriately to the pressures and expectations of a normal work setting. (Tr. 603-04.)  The ALJ noted the limitations assessed by Mr. Pharaoh and summarized some of his comments. (Tr. 18.)  The ALJ gave some weight to Mr. Pharaoh's assessment, but noted that greater weight was given to acceptable medical sources such as Dr. Grindlinger. (Tr. 19.)  The ALJ also observed that although Mr. Pharaoh assessed marked and moderate limitations, plaintiff apparently reported no alcohol abuse to Mr. Pharaoh, although evidence of alcohol use exists elsewhere in the record. (Tr. 19-20.)  As a result, the ALJ concluded that plaintiff is no more than moderately limited in social functioning without the effects of alcohol abuse and that plaintiff's concentration, persistence and pace would likely improve with abstinence from alcohol, but he would still have moderate limitations. (Tr. 20.)

Plaintiff argues the ALJ erred by considering plaintiff's alcohol use in evaluating Mr. Pharaoh's report because Mr. Pharaoh specifically noted no evidence of substance abuse and indicated all questions about the effect of drug or alcohol abuse were not applicable. (ECF No. 23 at 11, Tr. 603-04.)  However, the record reflects that plaintiff was abusing alcohol before and after Mr. Pharaoh's evaluation.  In March 2008, plaintiff reported to another provider that he had been told that he drinks too much and that he had tried to quit, but had not been able to.  (Tr. 600.)  In July 2008, plaintiff told his counselor that he went drinking the previous night and blacked out. (Tr. 574.)  In January 2009, he reported that in the past year he had been drinking five or six drinks two to three times per week.  (Tr. 701.)  Thus, although plaintiff

---

[3]It is noted that plaintiff identifies Mr. Pharaoh as "treating source," although there is no evidence in the record that Mr. Pharaoh treated plaintiff or saw plaintiff on more than one occasion.  (ECF No. 23 at 10.)  Mr. Pharaoh appears to be an examining source whose opinion may be given less weight than a treating source.

evidently reported to Mr. Pharaoh that alcohol use was not a factor, the evidence reflects otherwise.  It was impossible for Mr. Pharaoh to accurately assess the impact of alcohol abuse if he was unaware of plaintiff's alcohol use.  This makes Mr. Pharaoh's assessment of plaintiff's limitations less valuable to the ALJ when analyzing the impact of alcohol use on plaintiff's residual functional capacity.  As a result, the ALJ properly considered and gave weight to Mr. Pharaoh's report without regard to alcohol abuse, but in determining plaintiff's RFC with the effects of alcohol abuse, the ALJ gave a germane reason for excluding  the report.

Plaintiff also argues alcohol use should not be a consideration in assessing Mr. Pharaoh's opinion because the record does not establish alcohol abuse that meets the listings.[4]  (ECF No. 23 at 11.)  Plaintiff points to a letter dated February 2, 2007 indicating that plaintiff had been screened for substance abuse and did not meet the DSM-IV criteria and that substance abuse treatment was not recommended.  (Tr. 272.)  However, as discussed, *supra*, plaintiff made inconsistent reports regarding alcohol use to various providers throughout the record.  It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence.  *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).  The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ's consideration of the effects of alcohol was reasonable and appropriate based on the evidence.

Plaintiff also notes he reported to  Dr. Grindlinger reported on July 23, 2007 that he had been controlling his alcohol use better and had not been binge drinking.  (Tr. 414.)  However, on July 6, 2007 Dr. Grindlinger suspected plaintiff did not show up for his appointment because he had been drinking and by September 2007, Dr. Grindlinger discharged plaintiff from care because he was shooting pool in

---

[4]Plaintiff cites no authority for the proposition that the ALJ may only consider "listing level" substance abuse.  When there is medical evidence of drug or alcohol addiction, the ALJ is directed to determine whether the drug or alcohol addiction is a material factor contributing to the disability.  20 C.F.R. §§ 404.1535(a), 416.935(a).  Here, the medical evidence includes diagnoses of alcohol abuse.  The ALJ therefore properly considered and made inferences from evidence of plaintiff's alcohol use in assessing Mr. Pharaoh's report.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

bars and wondered whether plaintiff was abusing alcohol. (Tr. 406, 417.) Dr. Grindlinger opined that alcohol abuse would affect plaintiff's emotional stability. (Tr. 406.) Substantial evidence supports the ALJ's conclusion that the limitations assessed by Mr. Pharaoh do not include the impact of alcohol abuse and the ALJ's consideration of Mr. Pharaoh's opinion was therefore reasonable. The ALJ gave a germane reason for rejecting Mr. Pharaoh's report with respect to the effects of alcohol abuse and did not err.

       **b.**    **Laurie Spencer, RN**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting the assessment of Laurie Spencer, RN. (ECF No. 23 at 11-12.) Ms. Spencer completed a DSHS Physical Evaluation form in April 2007. (Tr. 291-94.) She assessed a marked interference with the ability to perform work-related activities due to spondylosis, disc bulging, and ulnar/olecranon neuropathy and opined that plaintiff's work level is sedentary. (Tr. 292.) She noted limitations in lifting, bending and repetitive movement. (Tr. 293.) The ALJ assigned less weight to Ms. Spencer's opinion because it is a "non-accepted medical opinion" and because it is inconsistent with the surrounding evidence. (Tr. 23-24.)

Plaintiff argues the ALJ improperly rejected Ms. Spencer's opinion as a "non-accepted medical opinion." (ECF No. 23 at 11.) Disregard of other source opinions is inconsistent with the regulation directing consideration of observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2). If the ALJ intended to reject Ms. Spencer's opinion as unacceptable because she is not a physician, the ALJ erred. However, the opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). The ALJ described the opinion evidence in detail before rejecting Ms. Spencer's opinion, including the opinions of acceptable medical sources and other non-acceptable medical sources. (Tr. 23-24.) As such, a reasonable interpretation of the ALJ's language is that he intended to assign less weight to Ms. Spencer's opinion as an other source opinion. Nonetheless, even if the ALJ erred by giving an improper reason for rejecting Ms. Spencer's opinion, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

error is harmless because the ALJ provided another germane reason for rejecting Ms. Spencer's opinion[5].

The ALJ also rejected Ms. Spencer's opinion because it is inconsistent with other evidence in the record. (Tr. 24.) Inconsistency with medical evidence is a germane reason for rejecting lay witness evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ undertook a detailed examination of the evidence and cited numerous other opinions and objective medical evidence suggesting the limitation to sedentary work is not consistent with plaintiff's actual limitations. The ALJ noted Dr. Rayapati's October 2006 treatment notes which indicated plaintiff complained of back and shoulder pain. (Tr. 322.) Dr. Rayapati noted a normal shoulder exam with normal range of motion, good motor and no crepitus, a normal thoracic spine exam, nontender spine, and no abnormal findings in the interscapular area. (Tr. 324.) In February 2007, cervical, thoracic and lumbar spine x-rays were performed. (Tr. 295-98.) The results were normal thoracic spine with some mild degenerative changes, subtle narrowing of some lumbar spine disc space but otherwise unremarkable lumbar spine, and mild to moderate spondylosis and some spinal canal narrowing in the cervical spine. (Tr. 295-98, 312.) In March 2007, Dr. Eisler completed an electrodiagnostic study of plaintiff's arm and concluded there was a suggestion of elbow and distal ulnar neuropathy, but no clear evidence for other nerve damage. (Tr. 276.)

After Ms. Spencer opined that plaintiff was limited to sedentary work, plaintiff continued to complain of back pain and underwent a lumbar spine MRI in July 2007 which Ms. Spencer noted was completely normal. (Tr. 448, 450.) A cervical spine MRI in October 2007 revealed a disk bulge at C3-4 and C4-5 but there was no focal protrusion, canal stenosis or foraminal stenosis. (Tr. 440.) A disk protrusion at C5-6 did not appear to affect any nerve root or explain plaintiff's reported left arm pain. (Tr. 442.) In December 2007, Dr. Platter reviewed the medical record and opined that symptoms and

---

[5]As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless. *See Carmickle*, 533 F.3d at 1162; *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16

findings on exam and imaging were mild. (Tr. 477.) In May 2008, Dr. Eller noted results of a recent MRI and opined that no neurosurgical intervention was indicated for the cervical spine. (Tr. 686.) Dr. Eller also noted muscle atrophy in plaintiff's left hand and emg results of left ulnar nerve entrapment which correlates with his motor and sensory symptoms in his left upper extremity. (Tr. 686.) Plaintiff ultimately underwent cubital tunnel release surgery for decompression of the ulnar nerve in September 2008, which apparently resolved the issue with plaintiff's left arm.[6] (Tr. 646.)

Ms. Spencer's opinion that plaintiff was limited to sedentary work is not consistent with the relatively mild findings of treating, examining and reviewing physicians. It is the ALJ's duty is to resolve evidentiary conflicts. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985). The ALJ reasonably resolved the inconsistency in the evidence by assigning less weight to Ms. Spencer's opinion and gave a germane reason for rejecting the opinion. Although another ALJ may have decided the issue differently, the ALJ's conclusion is supported by substantial evidence. Therefore, the ALJ did not err.

**3.     Lay Witness**

Plaintiff argues the ALJ improperly rejected lay witness statements from his parents. (ECF No. 23 at 17.) As noted above, an ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006).

---

[6]During a post-operative phone checkup three days after surgery, plaintiff reported no problems, and by October 7, nearly a month after surgery, plaintiff had no complaints, symptoms were improved, plaintiff had full range of motion in finger, wrist and elbow, sensation was improved, no sensory deficits were noted, and the incision was healing without problem. (Tr. 665-66.) Several months later, plaintiff alleged the RN he spoke with on October 7 "turned everything I said around. I was having problems and she made it seem[] as if every thing was ok. [S]he lied." (Tr. 693.) Plaintiff reported he was having trouble with his elbow, tightness, no range of motion, tingling and burnings sensations and numbness. (Tr. 693.) It was noted that plaintiff had recently been seen at the local emergency room for overuse of hydrocodone. (Tr. 693.) Dr. Martinez examined plaintiff in June 2009 and diagnosed chronic back pain, a herniated lumbar disc, depression, and alcohol use. Dr. Martinez noted a history of left elbow surgery, but did not assess any left arm impairment or note any complaints about the left arm. (Tr. 739-41.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -17

Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Plaintiff's father, Robert Dale Albers, and step-mother, Cathie L. Albers, each prepared a written statement discussing plaintiff's condition. (Tr. 246-53.)

The ALJ found the statements credible to the extent they are consistent with the RFC, but noted "a certain amount of bias exists when a parent tries to help his or her child." (Tr. 27.) There is at least some authority indicating rejection of lay witness testimony is permissible when a close relationship suggests possible bias. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006). However, there is no evidence of lack of credibility or bias here, and in general, the fact that a lay witness is a family member is not a ground for rejecting his or her testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir.1993). To the extent the ALJ considered the family relationship a reason for rejecting the lay witness statements, the error is harmless because the ALJ cited other germane reasons supported by substantial evidence in rejecting portions of the statements.

Although plaintiff asserts the ALJ rejected the statements of Mr. and Mrs. Albers primarily because they are related to the claimant (ECF No. 23 at 17), the ALJ cited two additional reasons for giving less weight to the statements. (Tr. 27.) One reason given by the ALJ for giving limited weight to the statements of Mr. and Mrs. Albers is that there is no evidence indicating how often the witnesses observed plaintiff's condition. (Tr. 27.) Testimony from friends and family may be considered if the witness is in a position to observe a claimant's symptoms and daily activities and is competent to testify regarding the claimant's condition. *Dodrill*, 12 F.3d at 918-19; *see also Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir.1996) . Mr. Albers mentioned he watched plaintiff's condition decline and his pain increase "what seemed daily" after he returned home from Ft. Bliss, and also mentions it is heartbreaking to watch his son struggle "every single day." (Tr. 246, 248.) Mrs. Albers notes her observations cover the period after plaintiff's return home from Ft. Bliss in December 2005, but no other reference to the timing or

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -18

frequency of observations is evident from the record. The ALJ observed that plaintiff was living with his girlfriend and son during the relevant time period and there is no evidence showing the opportunity for regular observation by plaintiff's parents. (Tr. 27, 174, 176.) The evidence does not establish that Mr. Albers and Mrs. Albers were in a position to personally observe plaintiff's symptoms and daily activities and the ALJ reasonably concluded their statements were entitled to limited weight.

The ALJ also determined the statements are not supported by the objective medical evidence in assigning limited weight to Mr. and Mrs. Albers' comments. (Tr. 27.) As noted *supra*, an ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Mr. Albers described plaintiff as unable to walk for hours or days at a time, sit comfortably or stand for any length of time. (Tr. 246-47.) Mrs. Albers mentioned many days in which plaintiff could "barely move" because of pain and instances where plaintiff collapsed while walking. (Tr. 250.) Mrs. Albers also described plaintiff as "extremely limited in any daily activities such as walking, standing, sitting, lifting anything over a few pounds and his range of motion is virtually non-existent." (Tr. 250-51.) These statements suggest limitations in excess of any indicated by plaintiff's treating and examining physicians. Both Mr. Albers and Mrs. Albers noted symptoms of plaintiff's reported depression or PTSD similar in nature to those complained of by plaintiff. (Tr. 247-48, 251.) However, as the ALJ observed, no provider opined that plaintiff cannot work due to his mental or physical problems. (Tr. 27-28.) None of the statements by Mr. or Mrs. Albers regarding plaintiff's physical or mental health sheds any additional light on his ability to work or his alleged symptoms. As a result, the ALJ's reason for discounting the statements of Mr. and Mrs. Albers is germane and supported by substantial evidence.

**4.    Step Four**

Plaintiff argues the ALJ made inadequate findings at step four. (ECF No. 23 at 17-20.) At step four, the ALJ makes findings regarding residual functional capacity and determines if a claimant can perform past relevant work. Although the burden of proof lies with the claimant at step four, the ALJ has a duty to make the requisite factual findings to support his conclusion. S.S.R. 82-62. This is done by looking at the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). In finding that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -19

an individual has the capacity to perform a past relevant job, the decision must contain among the findings the following specific findings of fact:

    1.    A finding of fact as to the individual's residual functional capacity;

    2.    A finding of fact as to the physical and mental demands of the past job/occupation; and

    3.    A finding of fact that the individual's residual functional capacity would permit a return to his or her past job or occupation.

SSR 82-62.

These findings must be based on evidence in the record and must be developed and fully explained by the ALJ. Step four requires specific findings on all three points sufficient "to insure that the claimant really can perform his past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *see also* SSR 00-4p

Plaintiff argues the ALJ failed to make the necessary findings at each phase listed in S.S.R. 82-62. The ALJ thoroughly discussed the evidence in making the RFC finding and for reasons discussed throughout this decision, the ALJ did not err. The ALJ also discussed the physical and mental demands of plaintiff's past work. (Tr. 27.) The ALJ noted past work as a cashier was unskilled and work in retail sales was semi-skilled. (Tr. 27.)

The ALJ also assessed plaintiff's work experience to determine whether plaintiff had past relevant work. (Tr. 27.) Past relevant work is work that was "done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Plaintiff reported working as a cashier[7] for six months in 1994 and 1995 and in retail sales for two months in 2002 . (Tr. 27, 184.) In assessing plaintiff's past work, the vocational expert testified that plaintiff's work as a cashier was unskilled  light work with a specific vocational preparation (SVP) of 2 and the

---

[7]Plaintiff described the position as an assistant to sales agents and mentioned duties such as maintaining inventory, using a cash register, driving a truck, and cleaning vehicles. (Tr. 184.) However, the vocational expert testified that based on the work performed, the position could be divided into cashier duties and vehicle porter duties. (Tr. 112.) The vehicle porter duties are medium work and therefore were not considered based on the RFC for light work. (Tr. 112.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -20

retail sales position was semi-skilled light work with an SVP of 3. (Tr. 27, 112.) The SVP is the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance of a certain job. U.S. DEP'T. OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, Appendix C (4th ed. 1991.) An SVP of 2 means the job can be learned in the period of time beyond a short demonstration up to two months, and an SVP of 3 means it should take between 1 and 3 months to learn the position. *Id.* Plaintiff met the SVP requirements for both positions, and as a result he worked at the jobs long enough to learn how to do them. Thus, the jobs meet the recency and timing requirements of past relevant work.

Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full- or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. §§ 404.1574(a), 416.974(a). However, if average monthly earnings are less than the amount described in the regulations, it is presumed that a claimant has not engaged in substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(3); 404.974(b)(3). For work from January 1990 to June 1999, monthly earnings of $500 is substantial gainful activity under the regulations. 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). Based on plaintiff's report of the cashier position, he worked seven hours per day, five days a week for seven dollars per hour, or $700 per month, in excess of the minimum for substantial gainful activity. (Tr. 184.) However, the earnings record for 1994 reflects earnings of $1,143 for the entire year and the earnings record for 1995 reflects earnings of $727 for the entire year. (Tr. 165.) Assuming that the work in 1994 and 1995 was done over a  six month period, the average pay was $311 per month, which is less than the amount required to qualify as substantial gainful activity. Thus, the ALJ erred by considering the cashier position substantial gainful activity.

Plaintiff also reported work in retail sales as a cashier for two months in 2002 for nine hours per day, five days a week for eight dollars per hour, or $1,140 per month. (Tr. 27, 184.) Based on plaintiff's report, the retail sales experience is substantial gainful activity. The earnings report for 2002 reflects $3,969 earnings for the entire year. (Tr. 165.) The breakdown of the earnings report appears to show that a portion of the earnings in 2002 was military pay, but the remainder of the earnings for 2002 averaged

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -21

over two months exceeds $500 per month, so the presumption of substantial gainful activity applies. (Tr. 169.) Thus, the ALJ properly considered the retail sales position as past relevant work.

The ALJ also compared the RFC plaintiff would have if he stopped substance use with the physical and mental demands of past work. (Tr. 27.) The ALJ asked the vocational expert whether an individual with the same RFC as the claimant could perform the past relevant work, and the vocational expert testified that such an individual could perform the retail sales position. (Tr. 27, 69.)

Plaintiff argues the ALJ erred by failing to provide a more detailed analysis of the comparison of past relevant work to the RFC. (ECF No. 23 at 18-19.) Plaintiff cites *Pinto*, 249 F.3d 840, and argues the ALJ erred by relying solely on the conclusion of the vocational expert without making the necessary step four findings. (ECF No. 23 at 19.) However, unlike the ALJ in *Pinto*, the ALJ here specifically noted that plaintiff would be able to perform past relevant work as generally performed. (Tr. 27.) Furthermore, in *Pinto*, there was uncontradicted evidence that the RFC contained a limitation inconsistent with past relevant work as actually performed and a limitation inconsistent with the DICTIONARY OF OCCUPATIONAL TITLES description as generally performed. *Id.* at 845, 847. Here, plaintiff identifies no similar inconsistencies, except for limitations plaintiff argues should have been included in the RFC which have been resolved elsewhere in this decision.

However, even if the ALJ erred at step four, the ALJ continued the analysis. (Tr. 28.) Because the final disability determination would be unchanged if plaintiff's past work is not substantial gainful activity, any error in the substantial gainful activity analysis is harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (where corrected error does not change the outcome, the error is harmless). The ALJ asked whether the vocational expert's testimony that plaintiff could perform past relevant work was based on a composite position of cashier/sales clerk. (Tr. 115.) To clarify the testimony, the ALJ asked the vocational expert whether an individual with an RFC identical to plaintiff's RFC could perform the job of sales clerk or cashier II separately in the way those jobs are usually done in the economy. (Tr. 115.) The vocational expert testified that such a hypothetical individual could perform either job, and that such jobs exist in significant numbers in the national economy. (Tr. 28, 115.) As a result, the evidence establishes that even if the positions are not past

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -22

relevant work, the cashier and sales clerk jobs are jobs that plaintiff could perform, and that those jobs exist in significant numbers in the national economy.  (Tr. 28.)  Thus, the ultimate nondisability determination would be unchanged, even if the step four analysis contained an error.  *See Tommasetti v. Astrue,* 533 F.3d 1035, 1042 -1043 (9th Cir. 2008)**.**

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment **(ECF No. 25)** is **GRANTED.**

2.      Plaintiff's Motion for Summary Judgment **(ECF No. 22)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant.  Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED July 12, 2011

                         S/ JAMES P. HUTTON
                   UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -23